UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER PATRICK SNOW,

       Petitioner,

v.                                      CASE NO. 07-15214
                                        HONORABLE NANCY G. EDMUNDS

JAN E. TROMBLEY,

       Respondent.

_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Christopher Patrick Snow has filed a *pro se* petition for the writ of habeas corpus, challenging his state conviction for first-degree home invasion. Also pending before the Court are Petitioner's motions for oral arguments and for an evidentiary hearing on the claim that his trial attorney was ineffective. The Court agrees with respondent Jan E. Trombley, who has filed a responsive pleading through counsel, that Petitioner's claims lack merit or are procedurally defaulted. Accordingly, the petition and pending motions are denied.

**I. Background**

Petitioner was tried jointly with his co-defendant, William Fraley ("Fraley"), in Livingston County Circuit Court. The complainant, Monica Adams, identified both defendants as the men who honked their car horn in her driveway on August 25, 2004. The men then parked their car in a field across the road and approached her front door on foot. They rang her door bell at least four times before walking to the back of her

house.  She heard them pop open the door from the sunroom to the pantry.  At the time, she was inside the house talking to a 911 operator.  She ran out the west side of the house and then observed the door to her sunroom swing open.  The two men ran around the east side of her house and across the road to the field where they had parked their car.  She subsequently found the handle of her candle snuffer in the pantry, and she noticed scratches on the door leading from the pantry to the kitchen.

Petitioner and Fraley were arrested about four or five miles from the Adams home shortly after the incident.  Petitioner admitted to the arresting officer that he and Fraley had been to the Adams home.  The officer took the two men back to the Adams house where Ms. Adams identified them.

Neither Petitioner, nor Fraley, testified or presented any witnesses, and they did not dispute that they were present at the Adams home on August 25, 2004.  Their defense was that the prosecutor failed to show they were guilty of first-degree home invasion because (1) there was no direct evidence that Ms. Adams was present in the house during the break-in and (2) there was no evidence that they intended to commit a larceny when they entered the house.  Defense counsel urged the jurors to find the defendants not guilty of the charged offense or, at worst, guilty of illegal entry without the owner's permission, which did not require finding that the defendants intended to commit a larceny.   On January 25, 2005, the jury found Petitioner and Fraley guilty, as charged, of first-degree home invasion, Mich. Comp. Laws § 750.110a(2).

The trial court sentenced Petitioner as a habitual offender to imprisonment for a minimum term of fifteen years, eight months and a maximum term of forty years. Petitioner appealed as of right, but the Michigan Court of Appeals affirmed his

conviction in an unpublished, *per curiam* opinion. *See People v. Snow*, No. 262078 (Mich. Ct. App. Dec. 21, 2006). On April 24, 2007, the Michigan Supreme Court denied leave to appeal. *See People v. Snow*, 477 Mich. 1117; 729 N.W.2d 864 (2007).

Petitioner filed his habeas corpus petition on December 7, 2007. He alleges that the prosecutor produced insufficient evidence to support the jury's verdict and that the trial court erred when instructing the jury. Respondent argues that the state court's adjudication of Petitioner's first claim was not objectively unreasonable and that Petitioner's failure to object to the jury instructions bars substantive review of his second claim.

## II. Standard of Review

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state court's adjudication of his claims on the merits –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle

3

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).

### III.  Discussion

#### A.  The Sufficiency of the Evidence

Petitioner alleges that the evidence adduced at trial was insufficient to support the jury's verdict. Specifically, Petitioner alleges that there was no evidence of an intent to commit a larceny. He points out that no items were taken from the residence and that he was not found in possession of any burglary tools or even a bag in which to carry away stolen items. The Michigan Court of Appeals determined on review of Petitioner's claim that the circumstantial evidence was sufficient to support a finding that Petitioner intended to steal something from the complainant's home.

### 1. Legal Framework

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original).

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16. In Michigan,

> [t]he elements of first degree home invasion are: (1) the defendant broke and entered a dwelling or entered the dwelling without permission; (2) when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon.

*People v. Perreo*, No. 283450, 2009 WL 609554, at *3 (Mich. Ct. App. Mar. 10, 2009) (unpublished decision citing Mich. Comp. Laws §750.110a(2) and *People v. Sands*, 261 Mich. App. 158, 162; 680 N.W.2d 500 (2004)), *appeal denied*, __ N.W.2d __, No. 138773, 2009 WL 2431916 (Mich. Aug. 6, 2009).

### 2. Application

The testimony in this case established that Petitioner and Fraley drove onto the complainant's driveway and honked their horn a few times. When no one responded,

they drove across the road and parked their car in a field. Then they returned to the Adams home on foot and rang the complainant's doorbell several times. Petitioner interprets this evidence as proof that he and Fraley announced themselves and therefore did not have an intent to commit a larceny. The jury, however, could have inferred from the evidence that the defendants were "casing" the house to determine whether anyone was at home.

There was additional evidence that Petitioner and Fraley went to the back of the house where they were not likely to be seen and broke into the house. Although Ms. Adams did not actually see the men in her home, she testified that she was inside the house when she heard a locked door pop open. After she ran out of the house, she saw the door to the sunroom swing open and the men run around her house. When she yelled something to them, they ran even faster to their vehicle.

A neighbor saw a vehicle similar to the one described by Ms. Adams. As the car crossed through his yard, he noticed that the license plate was concealed by a jacket, which hung from the trunk. Petitioner and Fraley were arrested a short time later, and Petitioner then admitted that he and Fraley had been at the Adams home.

Ms. Adams later found her candle snuffer in the pantry, although she normally kept it in the sunroom. It was broken, and a police officer testified that scratches on a door leading to the kitchen were consistent with someone trying to break open the door with the candle snuffer.

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner broke into and entered the Adams residence without permission and while Ms. Adams was inside the house. A rational juror also

6

could have inferred that Petitioner intended to commit a larceny. Although nothing was taken from the house, the obvious explanation for Petitioner's presence in the house was that he intended to steal something. There was no other explanation for his conduct and his presence in the house. Thus, the state court's conclusion that the circumstantial evidence was sufficient did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*.

### B. The Jury Instructions

The second and final habeas claim challenges the trial court's failure to instruct the jurors that they were not required to reach a unanimous decision on the charged offense before considering the lesser-included offense of illegal entry without the owner's permission. Respondent contends that this claim is procedurally defaulted because the Michigan Court of Appeals limited its review of the claim to consideration of whether "plain error" occurred.

#### 1. Procedural Default

"[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). All three elements are satisfied here. First, there is a state procedural rule that requires defendants in criminal cases to preserve an issue by making an objection in the trial court before

presenting the claim to the court of appeals. *See People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-38 (1999). Petitioner violated this rule by failing to request the jury instruction that he claims should have been read to his jury. He also failed to object to the jury instructions as given.

The second element of procedural default (enforcement of the rule) was satisfied when the Michigan Court of Appeals reviewed Petitioner's claim for "plain error" affecting substantial rights. A state appellate court's review for plain error constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

The third element of procedural default (adequate and independent basis) is satisfied as well, in that the *Carines* rule was "firmly established and regularly followed" before Petitioner's trial. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Because all three elements of procedural default are present in this case, Petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 2. "Cause"

Petitioner alleges that his attorney was ineffective for failing to request the desired instruction or failing to object to the instructions as given. Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing

8

*Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)). To prove that his attorney was constitutionally ineffective, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must demonstrate "that counsel's representation fell below an objective standard of reasonableness," *id*. at 688, and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A reviewing court need not

> address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . , that course should be followed.

*Id*. at 697.

### a. The Facts

The trial court instructed the jury on the elements of first-degree home invasion and then stated, "You may also consider the lesser charge of entering a building without the owner's permission." (Tr. Jan. 25, 2004, at 39.) The court explained the verdict form by stating that there was one box to mark for home invasion in the first degree and one box to mark for illegal entry without permission. The court stated that the jurors should mark only one box and that, if they marked the "guilty" box for home invasion, the process had ended and they should stop their deliberations. The court went on to say that the jury could mark the box for "guilty" of illegal entry without the owner's

permission or "not guilty" of either of the offenses. (*Id.* at 42.) Defense counsel had no objections to the instructions as read. (*Id.* at 44.)

The deliberating jurors subsequently made two requests. First, they requested a definition of larceny, which was read to them. Later, they asked why the lesser charge was offered for their consideration. (*Id.* at 49.) In response to this question, the trial court pointed out to the jurors that they had been instructed on two offenses: first-degree home invasion and the lesser-included offense of entering a building without the owner's permission. The court explained that the greater charge contained some additional elements not found in the lesser charge and that it was up to the jury to decide whether the prosecutor had proved those elements. (*Id.* at 50-51.)

Defense counsel did not object to this supplemental instruction, but, after the jury resumed deliberating, the prosecutor said that perhaps the jurors should be instructed to consider the charged crime first and, if they could not agree on that offense, to consider the lesser offense. Defense counsel did not want any additional instructions read to the jury, and the trial court decided not to give any further instructions. (*Id.* 51-53.) After a lunch break and further deliberations, the jury reached a verdict.

### b. The State Appellate Court's Ruling

The Michigan Court of Appeals ruled that the trial court erred by not reading the standard criminal jury instruction on how to consider principal charges and less serious offenses. *See* CJI2d 3.11(5).[1] The Court of Appeals nevertheless held that the error did

---

[1] At the time, CJI2d 3.11(5) read:

In this case, there are several different crimes that you may consider.
When you discuss the case, you must consider the crime of [name

10

not amount to "plain error" because the trial court's instructions did not require the jurors to consider the charged offense before considering the lesser offense. The Court of Appeals concluded that the erroneous instructions did not seriously affect the fairness of the trial and that, even though it was objectively unreasonable for counsel not to object or to request a proper instruction, the result of the trial would not have been different had counsel objected.

### c. Analysis

This Court agrees that, even assuming defense counsel's performance was deficient, the deficient performance did not prejudice the defense. The jury instructions as given did not preclude the jury from considering the lesser-included offense of entering a building without the owner's permission. In fact, as the Michigan Court of Appeals pointed out, the trial court's instructions implied that the jurors could consider equally the charged offense and the lesser-included offense.

There is not a reasonable probability that the result of the trial would have been different had the trial court instructed the jurors that they did not have to unanimously agree Petitioner was not guilty of first-degree home invasion before considering the lesser-included offense. Therefore, defense counsel's failure to request that CJI2d 3.11(5) or something similar be read to the jury and his failure to object to the

---

principal charge] first. [If you all agree that the defendant is guilty of that crime, you may stop your discussions and return your verdict.] If you believe that the defendant is not guilty of [name principal charge] or if you cannot agree about that crime, you should consider the less serious crime of [name less serious charge]. [You decide how long to spend on (name principal charge) before discussing (name less serious charge). You can go back to (name principal charge) after discussing (name less serious charge) if you want to.]

instructions as given did not prejudice the defense.  Defense counsel was not constitutionally ineffective, and Petitioner has failed to establish "cause" for his procedural default.

### 3. Prejudice; Miscarriage of Justice

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional error, because he has failed to show "cause" for his procedural default. *Willis*, 351 F.3d at 746 (citing *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000)). The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496.  To be credible, a claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In support of an allegation of actual innocence, Petitioner reiterates that there was no evidence of intent to commit a larceny.  He has not presented any new evidence to support his claim of actual innocence.  Consequently, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of his claim about the jury instructions.

## IV. Conclusion

Petitioner's claim about the jury instructions is procedurally defaulted, and the

state appellate court's rejection of his sufficiency-of-the-evidence claim did not result in a decision that was contrary to, an unreasonable application of, Supreme Court precedent. Accordingly, the petition for writ of habeas corpus (Dkt. #1) is **DENIED**. The motions for oral arguments and an evidentiary hearing [Dkt. #10-11] are **DENIED** because neither one is necessary.

The Court **DECLINES** to issue a certificate of appealability on Petitioner's first claim because reasonable jurists would not disagree with the Court's resolution of the claim, and the issue is not adequate to deserve encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 705 (2004) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). The Court declines to issue a certificate of appealability on Petitioner's second claim because reasonable jurists would not debate whether the Court's procedural ruling is correct or whether the habeas petition states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal without further authorization from the Court, because he was granted *in forma pauperis* in this Court and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3).


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

13

Dated:  August 18, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2009, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager